248 F.2d 869
 57-2 USTC P 9989
 Sam SIMON, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Albert SIMON, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Clara SIMON, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Melvin SIMON, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 15752-15755.
 United States Court of Appeals Eighth Circuit.
 Oct. 29, 1957.
 
 Llewellyn A. Luce, Washington, D.C. (Walter H. Maloney, Washington, D.C., and Kenneth K. Simon, Kansas City, Mo., on the brief), for petitioners.
 Louise Foster, Attorney, Department of Justice, Washington, D.C. (Charles K. Rice, Asst. Atty. Gen., and John N. Stull, Bobert N. Anderson, and S. Dee Hanson, Attorneys, Department of Justice, Washington, D.C., on the brief), for respondent.
 Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 Sam Simon, his wife, Clara, and his sons, Albert and Melvin Simon, hereinafter usually called taxpayers, have petitioned the court to review the decisions of the Tax Court determining substantial deficiencies in their individual income tax for the years 1942 to 1945, inclusive, and statutory additions thereto by reason of fraud and delinquency penalties. These petitions which involve common questions were consolidated in the Tax Court and are consolidated here.
 
 
 2
 The principal error urged in that the Tax Court erred in treating all of the sums received by the individual taxpayers from U.S. Packing Company, Inc., hereinafter called the corporation, as ordinary income, the taxpayers' contention being that the income diverted from the corporation by the stockholders should be treated as corporate distributions. Complaint is also made by Clara Simon as to the computation of fraud and delinquency penalties against her.
 
 
 3
 The cases of the petitioners were consolidated in the Tax Court with the appeal of the corporation. The memorandum findings of fact and opinion of the Tax Court, not officially reported,[1] were filed on July 15, 1955. The material facts which we here set out are either undisputed or are taken from the findings of the Tax Court.
 
 
 4
 The individual taxpayers, during the tax years here involved, were residents of Missouri, and filed their tax returns in that State. The corporation was formed in 1942 by Sam Simon and his sons, Albert and Melvin. Sam served as president, Albert as secretary and general manager, and Melvin as treasurer. The Board of Directors consisted of Sam, Clara, Albert, and Melvin. The authorized capital of the corporation was 1,500 shares with a par value of $100 a share. Seven hundred shares involving a paid-in capital of $70,000 were issued. One hundred shares were issued in the name of Sam Simon, 250 shares were issued in the name of Sam Simon as trustee for various members of his family, and 350 shares were issued to Superb Packing Company. Later, the corporation acquired the shares issued to Superb Packing Company and held them for a time as treasury stock. Such stock after 1944 was sold. Two hundred fifty shares were issued to Sam Simon, 50 shares to Sam Simon as trustee for Melvin, and 50 shares to Sam Simon as trustee for Albert. The money for the purchase of the original stock was withdrawn by Sam Simon from various savings and loan association accounts belonging to Sam Simon and members of his family.
 
 
 5
 The corporation operated a slaughtering and processing plant at Kansas City, Kansas. It sold dressed carcasses of beef in carload lots and various by-products. The corporation, during the years here involved, was subject to the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, 901 et seq., which, among other things, placed a ceiling upon the prices the corporation could charge for its products. The corporation made many sales at above ceiling prices. Side payments in cash were collected for the overage above the ceiling prices, and most of such black market payments are not reflected in the corporation's records or in its income reported for tax purposes. The corporation and Sam and Albert Simon were indicted for conspiracy to sell beef at over ceiling prices, pleaded guilty to said charge, and were convicted and sentenced. Taxpayers do not dispute the fact that the corporation was engaged in black market operations. Taxpayers and the corporation both contended that the black market profits were ultimately reflected in the corporate records and accounted for in the corporation's tax returns.
 
 
 6
 It is undisputed that between April 16, 1943 and May 17, 1945, taxpayers purchased United States bonds aggregating a face value of $211,500, costing with accrued interest $213,098.47, which bonds were issued as follows: Sam Simon, $130,500; Albert Simon, $14,500; Clara Simon, $38,000; and Melvin Simon, $28,500. Additional currency totaling $21,780 was used for the benefit of the various taxpayers. This currency added to that used to purchase bonds totals $234,878.47. The Commissioner determined that such sum was the amount of unreported corporate sales, and that tax upon such unreported sales was due from both the corporation and the individual taxpayers. The Tax Court found some of the black market sales had been reported, and that the unreported sales for the involved tax years aggregated $191,542.55.[2] The Tax Court's finding as to corporate income is as follows:
 
 
 7
 'The unreported sales for these three years aggregate $191,542.55, but respondent's aggregate adjustment for these years is $234,878.479 The difference of $43,335.92 has been called unidentified sales. After examining the record as to the unidentified sales, we conclude that respondent has erred, and these sales should not be included in the adjustments to the Corporation's net income.' o$tThe Corporation does not petition for a review of the determination of its tax liability. The liability of the corporation to pay the tax on 191,542.55 of unreported income has been conclusively established. The Tax Court's findings as to the corporation are incorporated in this opinion as they have an important bearing upon the issues before us.
 
 
 8
 The Tax Court then found that the same income from black market sales, which the corporation had failed to report and upon which the corporation was taxed, was diverted by the individual taxpayers, and was used by them in the bond purchases for their individual benefit, heretofore described. The Tax Court on the individual income issues states:
 
 
 9
 '* * * In the first issue (corporate income) the record compelled us to find that the Corporation had gains from unreported over-ceiling sales. Since there were gains, some one must have benefitted from these gains.
 
 
 10
 'Respondent determined that the individuals diverted the corporate gains to their personal use. Petitioners have shown that respondent erred in the 'unidentified' sales, but they did not show error as to $191,542.55. Therefore, since respondent has determined that the individuals received the money, it is proper that the sum be prorated to the individual petitioners. * * *'The $191,542.55, which is the amount of corporate income the Tax Court found the individual stockholders had diverted, was prorated to the taxpayers in the ratio of the bond purchases heretofore set out. No one has objected to this method of apportionment. The taxpayers in their petitions do not contest the Tax Court's determination that they received funds belonging to the corporation in the amount found by the Tax Court. Taxpayers' complaint is that the identical income taxed to the corporation can not be taxed to the individual taxpayers as ordinary income, but must be treated as corporate distributions. It is very clear from the record that the Commissioner is seeking to tax the same unreported income upon which the corporation was taxed to the individual taxpayers as ordinary income. The Tax Court has determined that the unreported black market income here involved was income to the corporation and taxable to it.
 
 
 11
 Before considering the main contention of the taxpayers that the receipts diverted by the stockholders should be taxable as dividends, it is necessary to examine the Commissioner's contention that such issue was not properly raised in the Tax Court and hence can not be asserted here.
 
 
 12
 The pleadings in the Tax Court do not appear in the printed record. The statement of issues in the Tax Court indicates that the issue before the Tax Court was whether the gross sales of the corporation had been understated, and whether the individual taxpayers had received unreported income. Doubtless, the question of the tax treatment to be given the funds belonging to the corporation which were diverted by the taxpayers was not raised in the original pleadings. In the Tax Court the corporation and the taxpayers took the position that there was no unreported income. The distribution and dividend issue was, however, squarely raised in the proceedings in the Tax Court for computation under Rule 50, 26 U.S.C. 7453. The Commissioner contends that this is a new issue and can not be raised in a Rule 50 computation proceeding. As stated by the Supreme Court in Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 313, 53 S.Ct. 150, 151, 77 L.Ed. 325, Rule 50 contemplates the tax computation upon the basis of the decision made by the Tax Court upon the issues before it, and such computation is 'confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the determination already made, and no argument will be heard or consideration given to * * * any new issues.' If corporate distributions are to be treated as constructive dividends, a subject hereinafter discussed, we seriously doubt whether the Tax Court in its original opinion made any determination as to the manner in which the diversions by the taxpayers should be treated for tax purposes. We feel that there is a reasonable basis for finding that this question was left open for consideration upon computation. The Commissioner apparently initially took this position as the original computation which he submitted to the taxpayers determined their individual taxes upon the theory that the distributions by the corporation to the taxpayers were to be treated as dividends and corporate distributions. This computation, agreed to by the taxpayers, was never submitted to the Tax Court by the Commissioner. Instead, the Commissioner submitted a new computation determining the taxpayers' income upon the basis that the diversions were to be treated as ordinary income. The Commissioner, of course, had a right to change his mind and submit the new computation. However, the fact that the Commissioner did make his first computation upon the basis of computation the taxpayers are contending is applicable at least indicates that there was room for construction of the original opinion of the Tax Court. The taxpayers at the Rule 50 computation hearing objected to the Commissioner's new computation and submitted as their own the Commissioner's original computation upon the dividend theory. The Tax Court, without opinion, ultimately adopted the computation of the Commissioner treating the diverted funds as ordinary income.
 
 
 13
 In their petitions for review filed in this court, the taxpayers clearly raised the issue that the diverted funds should be treated as corporate distributions to the taxpayers. The Commissioner, relying upon Helvering v. Pfeiffer, 302 U.S. 247, 58 S.Ct. 158, 82 L.Ed. 231, and Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511, and other cases, urges that an issue not raised in the Tax Court can not be raised upon appeal. This is doubtless the general rule. The Supreme Court in Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, recognizes the general rule prohibiting consideration of issues not raised in the trial court. The Court states that such rule is subject to exceptions, and that the rule should not be applied where the result would be a plain miscarriage of justice. The Court, among other things, says (312 U.S. at page 556, 61 S.Ct. at page 721):
 
 
 14
 '* * * In general, it is the function of the Board to determine the facts of a tax controversy on issues raised before it and to apply the law to these facts; and it is the function of the reviewing court to decide whether the Board has applied the correct rule of law.'
 
 
 15
 The Court calls attention to 26 U.S.C 1141(c)(1), giving the court of appeals power to modify or reverse a decision of the Tax Court if the decision of the court is not in accordance with the law, with or without remanding the case for a rehearing as justice may require. The Court further states (312 U.S. at page 559, 61 S.Ct. at page 722):
 
 
 16
 '* * * Whether articulated or not, the philosophy underlying the exceptions to the general practice is in accord with the statutory authority given to courts reviewing decisions of the Board of Tax Appeals-- decisions not in accordance with law should be modified, reversed or reversed and remanded 'as justice may require."
 
 
 17
 This court has considered an issue not raised in the trial court under appropriate circumstances. United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, 25. In our present case the Tax Court was advised in the Rule 50 proceedings of the issue here asserted. As heretofore indicated, there is at least some support for the taxpayers' contention that this issue was properly raised in the Rule 50 proceedings. The full tax on the diversions has been assessed against the corporation. Substantial deficiencies are claimed upon the same income against the taxpayers. A substantial difference in the tax liability of the taxpayers will result, depending upon which theory is applied. We are of the opinion that under all the circumstances of this case justice requires that consideration be given to the corporate distributions and dividend issue.
 
 
 18
 We now reach taxpayers' principal contention that the diverted corporate receipts, which were taxed to the corporation, should be treated as corporate distributions, and should be taxable as ordinary income to the diverting stockholders only to the extent of corporate accumulated earnings available for distribution of dividends. Courts have frequently, and apparently uniformly, held that where controlling stockholders divert corporate income to themselves, such diverted funds should be treated as constructive dividends. Lengsfield v. Commissioner, 5 Cir., 241 F.2d 508; Drybrought v. Commissioner, 6 Cir., 238 F.2d 735; Dawkins v. Commissioner, 8 Cir., 238 F.2d 174; Chesbro v. Commissioner, 21 T.C. 123, affirmed 2 Cir., 225 F.2d 674; Currier v. United States, 1 Cir., 166 F.2d 346; Stein v. Commissioner,25 T.C. 940; United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105.
 
 
 19
 The Commissioner has in many similar cases, including those above cited, insisted that under circumstances such as those disclosed by the facts in this case the corporate income diverted by the controlling stockholders should be treated as taxable income to the corporation and as dividends to the stockholders. We have examined the brief filed by the Commissioner in Dawkins v. Commissioner, supra, and such was his contention there. In the Dawkins case the taxpayer unsuccessfully contended that the unreported income was kept by him for the corporation and that there had been no diversion. The diverted corporate income upon which the corporation had been taxed was taxed to the taxpayer upon the constructive dividend theory.
 
 
 20
 The Commissioner presents no convincing reason why the constructive dividend rule he has heretofore applied in similar situations should not be applied here. In his brief, referring to the cases relied upon by taxpayers, some of which are included in the cases heretofore cited, he states:
 
 
 21
 '* * * Those cases stand for the proposition that diverted corporate funds are taxable as income to the corporation, and as dividends to the officer-stockholder diverter as ordinary income received from dividends to the extent of the corporate earnings and profits available therefor, and that the balance thereof is taxable to them as capital gain over and above the cost basis of their stock in the corporation, as stated by the taxpayers. * * *'
 
 
 22
 We are in full accord with this interpretation of the cases. The Commissioner then continues:
 
 
 23
 '* * * That might well be true, of course, in certain cases where the evidence of the corporate earnings and profits, etc., is introduced during the proceedings at the trial of the case and therefore appears in the record, as in those cases. * * *'
 
 
 24
 As we read the foregoing quotations from the Commissioner's brief, he in effect concedes that if the proper evidence of corporate earnings and earnings accumulations is in the record, the individual taxpayers' income should be computed of the dividend theory. The Commissioner contends that the record does not show the essential evidence necessary to compute the tax on the dividend theory. The record is not complete as to the evidence introduced at the trial. The record does show, as heretofore pointed out, that the Commissioner did originally submit a computation of the taxpayers' tax based on the constructive dividend theory. Certainly there must have been substantial evidence to enable him to make this computation. Moreover, even if the evidence is insufficient to afford a basis for the computation of the correct tax, taxpayers are entitled to a reversal if they have established that the Commissioner's computation is arbitrary and without rational foundation. In Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, the Commissioner contended that he was entitled to have his tax liability determination affirmed upon the basis that the taxpayer had not introduced evidence from which the correct tax liability could be computed. The Court thus states the issue (293 U.S. at page 508, 55 S.Ct. at page 288):
 
 
 25
 '* * * Whether the Circuit Court of Appeals erred in remanding this case to the Board of Tax Appeals for a new hearing on the ground that the Commissioner's determination of the amount of income was incorrect, although the taxpayer had failed to prove facts from which a correct determination could be made.'
 
 
 26
 The decision was for the taxpayer. The Court says (293 U.S. at pages 514-516, 55 S.Ct. at page 290):
 
 
 27
 'We find nothing in the statutes, the rules of the Board or our decisions that gives any support to the idea that the Commissioner's determination, shown to be without rational foundation and excessive, will be enforced unless the taxpayer proves he owes nothing or, if liable at all, shows the correct amount. * * *
 
 
 28
 'Unquestionably the burden of proof is on the taxpayer to show that that the Commissioner's determination is invalid. * * * But, where as in this case, the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that lawfully might be charged against him. On the facts shown by the taxpayer in this case, the Board should have held the apportionment arbitrary and the Commissioner's determination invalid. Then, upon appropriate application that further hearing be had, it should have heard evidence to show whether a fair apportionment might be made and, if so, the correct amount of the tax. * * *'
 
 
 29
 The Commissioner further urges that the diverted earnings can not be considered earnings because Sam Simon is the only taxpayer who held legal title to the corporate stock. It is clear that taxpayers other than Sam Simon acquired a substantial equitable interest in the stock during the involved years. All taxpayers were directors and all except Clara Simon were officers of the corporation. The stock was purchased with family funds. Obiously, the corporation was a closely owned family corporation.
 
 
 30
 In Dawkins, supra, the diverting stockholder held legal title to only a small percentage of the stock. Legal title to most of it was in his wife. There we said that for tax purposes the courts look to the substance rather than the form, and approved a finding that the diverting stockholder was the real owner of the stock. In our present case the Tax Court made no express finding as to the real ownership of the stock. The only reasonable conclusion flowing from the undisputed facts as found by the Tax Court is that the corporation is a closely held family corporation.
 
 
 31
 Moreover, constructive dividends need not be proportionate to stockholders. In Lengsfield v. Commissioner, supra, the court states (241 F.2d at page 511):
 
 
 32
 '* * * Furthermore, there is no requirement that a particular distribution be termed a dividend, or that there be a formal dividend declaration, or that all stockholders share in dividend distributions. * * *'
 
 
 33
 The questioned distribution in the Lengsfield case was made to two of the stockholders who owned 63 per cent of the stock. In Lincoln National Bank v. Burnet, 61 App.D.C. 354, 63 F.2d 131, taxpayer, owning four per cent of corporate stock, received 33 per cent of a distribution made by the corporation. Taxpayer claimed the distribution was a gift. The court held that the distribution should be treated as a dividend, stating (63 F.2d at page 133):
 
 
 34
 '* * * It is true that the directors considered it in part as a gift and not as a dividend, but this is not determinative oif the natujre of the distribution, nor is the fact that the distribution was to some of the shardholders only and not to others, nor that it was divided among the stockholders in proportions other than their respective holdings of stock in the corporation. The other shareholders have not complained of this inequality, and must therefore in this proceeding be deemed to have ratified the distribution. * * *'
 
 
 35
 Mertens Law of Federal Income Taxation, Vol. 1, 9.11, states that 'to be taxable as a dividend a corporate distribution need not be pro rata.' This statement is supported by numerous authorities in a footnote. The fact that no formal dividend has been declared is wholly immaterial. Lengsfield v. Commissioner, supra, and cases therein cited.
 
 
 36
 The Commissioner contends that Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439, support his contention that the taxpayers' income here involved constitutes ordinary income. These cases do not deal with the problem of corporate distributions, and we find nothing in said cases to support the contention urged by the Commissioner here. Reliance is also placed upon Bernstein v. United States, 5 Cir., 234 F.2d 475, and Davis v. United States, 6 Cir., 226 F.2d 331. These are both criminal cases. Drybrough v. Commissioner, supra, is a subsequent decision by the same circuit that decided the Davis case. The court in Drybrough states that criminal cases are of little help in deciding issues in civil cases such as we are here considering. There is at least some distinction between civil and criminal cases. In criminal income tax evasion cases, the exact amount of the tax evaded is not an important consideration. In criminal cases it is necessary to prove only that tax on some income has been fraudulently evaded. On the other hand, in civil proceedings for the collection of tax, an accurate determination of the accumulated corporate earnings is necessary to determine the amount of tax liability. In any event, the Drybrough case makes it clear that in civil cases the constructive dividend theory is to be applied in situations where a stockholder in a closely held corporation diverts income upon which the corporation is taxed. The decision in Bernstein v. United States, supra, appears to be based upon the court's determination that there were some surplus earnings out of which to pay the dividends, at least in part.
 
 
 37
 Section 115 of the Internal Revenue Code of 1939, as amended, 26 U.S.C. 1952 Edition, 115, deals with distributions by corporations and provides:
 
 
 38
 '115. Distributions by corporations
 
 
 39
 '(a) Definition of dividend. The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *
 
 
 40
 '(b) Source of distributions. For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *
 
 
 41
 '(d) Other distributions from capital. If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxalbe in the same manner as a gain from the sale or exchange of property. * * *'
 
 
 42
 The corporate distribution made in the present case fits the statutory definition of dividends to the extent of available corporarte earnings, and the definition of 'other distributions from capital' as to the excess. The diversions of corporate earnings and assets in our present case should be treated and taxed as ordinary income only to the extent that the corporate earnings, as defined in section 115, above, are available for dividend payments. To the extent that the distribution is not a dividend, the distribution is to be treated as a return of capital to the extent of the cost of the stock, and as capital gain as to the excess, if any, as provided in section 115(d). See Dawkins v. Commissioner, supra; Drybrough v. Commissioner, supra.
 
 
 43
 The theory advanced by the Commissioner in the present case that the diverted funds, under the existing fact situation, should be taxed as ordinary income rather than as constructive dividends and corporate distributions represents a substantial departure from the position taken by him in similar cases. We find neither statutory nor case authority for the Commissioner's present position. The Corporate distribution here was made with the knowledge of the stockholders and was acquiesced in by them. The corporation is liable for a substantial tax upon the diverted income it failed to report. Further tax will be collected from taxpayers under the constructive dividend theory. Fraudulent tax dealings should not be encouraged. Criminal penalties are provided for tax evasion, and fraud and delinquency penalties are assessed upon taxes due when the circumstances warrant. The Government should be allowed to collect all tax and penalties authorized by law, but is is not our function to expand tax liability to fields not covered by statute. We find nothing in the Tax Court's opinion to indicate that the diverted sums represented salary or any other recognized ordinary income. We believe that the only way that the diverted income already taxed to the corporation can be taxed to the individual taxpayers is by the treatment of such diversions as dividends and corporate distributions. The Tax Court erred in applying the law to the undisputed facts in this case. The Tax Court's conclusion that the diverted funds, under the circumstances of this case, should be treated as ordinary income of the taxpayers was induced by an erroneous view of the law.
 
 
 44
 Taxpayer Clara Simon makes the additional contention that the court erred in upholding the fraud and delinquency penalties for the year 1943, assessed against her pursuant to sections 293(b) and 291(a) of the Internal Revenue Code of 1939, 26 U.S.C. 293(b), 291(a). She does not dispute the right of the Commissioner to assess fraud and delinquency penalties, but complains that the Commissioner and the Tax Court erred in assessing the penalties upon the basis of the 1943 tax deficiency without deducting from such deficiency, for the purpose of computing the penalties, a 1945 loss carryback to which she was entitled. She contends that the 1945 loss carryback should have been deducted from the 1943 deficiency, and that the penalties on the 1943 tax should have been computed only upon the remaining balance. She cites no authorities in support of her contention.
 
 
 45
 The Tax Court committed no error in determining the fraud and delinquency penalties. The tax for 1943 became due and payable on the date the taxpayer was required to file her 1943 return, and the penalties became due and payable on the same date. The carryback provision does not relieve the taxpayer of the obligation to pay the tax in full when it falls due, and can not be interpreted as deferring taxpayer's duty to pay the tax promptly. Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346. In the case just cited the Court held that where a deficiency and interest have been assessed, a subsequent carryback loss which abates the deficiency does not abate the interest assessed. The reasoning of the Manning case supports the fraud and delinquency penalties here determined. The decision upon this issue also finds support in other cases. See C.V.L. Corporation v. Commissioner, 17 T.C. 812; Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, affirmed, 1 Cir., 216 F.2d 693; Nick v. Dunlap, 5 Cir., 185 F.2d 674; Petterson v. Commissioner, 19 T.C. 486.
 
 
 46
 Our determination that the tax due should be computed on the basis that the funds diverted by the taxpayers should be treated for tax purposes as constructive dividends and corporate distributions will have a bearing upon the amount of taxpayers' deficiencies, and hence upon the amount of the fraud and delinquency penalties that may be due. Such penalties should be recomputed upon the basis of the tax deficiencies ultimately determined.
 
 
 47
 While we are inclined to think that there is adequate evidence before the Tax Court to compute the tax upon the corporate distribution theory, we believe that under the circumstances of this case justice requires that either party should be allowed, if he so desires, to introduce further evidence with reference to the accumulated earnings of the corporation available for dividends during the tax years here involved.
 
 
 48
 The decisions of the Tax Court are reversed, and these causes are remanded to the Tax Court for further proceedings not inconsistent with the views expressed in this opinion.
 
 
 
 [1]
 Unofficially reported United States Packing Co. v. Commissioner, 1955 P-H, T.C. Memorandum Decisions, par. 55,194
 
 
 [2]
 The income attributable to the various taxpayers for each of the tax years, aggregating $191,542.55, is set out in detail in the Tax Court proceedings