FELIX DELGADO AND REBECCA DELGADO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Delgado v. Commissioner
Docket No. 29240-83.
United States Tax Court
T.C. Memo 1988-66; 1988 Tax Ct. Memo LEXIS 92; 55 T.C.M. (CCH) 155; T.C.M. (RIA) 88066; February 23, 1988; As amended March 1, 1988 Moe D. Karash, for the petitioners. Alfred Pierri, Frank Agostino, and Alan G. Merkin, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows: Addition to Tax
Taxable Year Ended
Deficiency
[1] Section 6653(b) December 31, 1973
$ 7,578
$ 3,789
December 31, 1974
$ 85,759
$ 42,880
*94 The issues for determination are (1) whether petitioners had unreported taxable income of $ 22,856 and $ 172,375 for taxable years 1973 and 1974, respectively; and (2) whether petitioners are liable for additions to tax for fraud under section 6653(b) for the taxable year 1973. [2]
*95 FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in White Plains, New York, when they filed their petition in this case. During the taxable years in issue, petitioner was employed by the Davis White Company ("Davis White"). Davis White was a wholesale and retailer of meats and meat products. Prior to his employment at Davis White, petitioner was an accountant for the accounting firm of Harris Kerr Forrester & Company and worked on the Davis White account. [3] Franklin Davis and Myron Davis, owners of Davis White, liked petitioner's work and offered petitioner employment at Davis White. [4]
Under the terms of his employment, petitioner had the opportunity to become a one-third shareholder in Davis White. As a result, petitioner, Franklin Davis and Myron Davis were each one-third shareholders of Davis White during the *96 taxable years in issue. [5] In addition to his 33-1/3 percent proportionate share of the profits and losses of Davis White, petitioner received an additional 10 percent of all net profits of Davis White. As a part of his employment duties, petitioner was in charge of the books and records of Davis White. During taxable years 1973 and 1974, Stouffers Food Corporation ("Stouffers") was a major customer of Davis White. Davis White supplies Stouffers with short ribs and beef stew meat. Petitioner was in charge of the Stouffers account for Davis White during 1973 and 1974. It is in connection with the Stouffers account that petitioner effected two schemes to evade taxation -- one plan with the complicity of the Davis brothers and one plan without their knowledge. First, petitioner, Franklin Davis and Myron Davis set up and were the sole shareholders in Deltek, Inc. ("Deltek"), a New Jersey corporation. Deltek was in the business of holding real property. During the years in issue, petitioner was the president of Deltek. Myron Davis and Franklin *97 Davis served as Vice-Presidents. [6]
On or about September 4, 1973, the shareholders of Deltek (petitioner, Franklin Davis and Myron Davis) deposited into the Deltek account maintained at Broad National Bank (the "Deltek Account") a check from Stouffers in the amount of $ 57,141.60. The Stouffers' check was made payable to Davis White and was endorsed by petitioner, Franklin Davis and Myron Davis. On September 10, 1973, petitioner, Franklin Davis and Myron Davis withdrew funds of $ 57,141.60 from the Deltek account as follows: Felix Delgado
$ 22,856.64
Myron Davis
17,142.48
Franklin Davis
17,142.48
Petitioner received the $ 22,856.64 in two checks of $ 17,142.48 and $ 5,714.16. On September 27, 1973, petitioner deposited these checks into the account of "Mrs Georgina Ramos c/o Rebecca Delgado" at the Springfield State Bank. *98 Georgina Ramos is the mother of petitioner Rebecca Delgado and the mother-in-law of petitioner Felix Delgado. [7]
On or about January 10, 1974, the shareholders of Deltek (petitioners, Franklin Davis and Myron Davis) deposited into the Deltek account a check from Island Meat Company payable to Davis White in the amount of $ 40,706.88. On or about February 6, 1974, petitioner and the Davis brothers collectively received the amount of $ 40,706.88 from the Deltek account as follows: Felix Delgado
$ 16,282.88
Myron Davis
12,212.00
Franklin Davis
12,212.00
Petitioner received the $ 16,282.88 amount in two checks of $ 12,212.00 and $ 4,070.88. On March 22, 1974, petitioner deposited these checks into his mortgage loan account at the Mohawk *99 Savings Bank and, to that extent, prepaid the outstanding mortgage loan on petitioners' personal residence. During November of 1973, petitioner advised Franklin and Myron Davis that Stouffers was about to start producing its own short ribs and would no longer require Davis White to supply them with this product. Prior to November 1973, Davis White sold short ribs to Stouffers for $ 1.79 per pound. Petitioner suggested that Davis White sell its short ribs to an entity called Island Meat Company ("Island Meat") for $ 1.25 per pound. Davis White sold short ribs to Island Meat until approximately June, 1974. Island Meat was the vehicle through which petitioner effected his second plan to evade tax. Island Meat was a Puerto Rico corporation which petitioner created. Petitioner enlisted the help of a childhood friend, Sergio Miranda, who lived in Puerto Rico to "run" the company. Island Meat "bought" shoort ribs from Davis White, its sole supplier, and "sold" to Stouffers, its sole customer. We find that petitioner set up Island Meat to cozen Davis White's account with Stouffer. In doing so, petitioner formulated a plan by which Davis White "sold" its now overstocked supply of *100 short ribs to Island Meat for $ 1.25 per pound, Island Meat "sold" the short ribs to Stouffers for $ 1.80 per pound, and petitioner pocketed .55 cents per pound for his own persoonal benefit. [8]
The meat products sold by Davis White to Island Meat were shipped to the Atlantic Refrigeration Company ("Atlantic Refrigeration") in Newark, New Jersey. These meat products were delivered to Stouffers' plant in Ohio directly from Atlantic Refrigeration in boxes marked with the Davis White label. A phone call from Stouffers to Davis White while petitioner was on vacation alerted the Davis brothers to this scheme. Before the Davis brothers pieced together petitioner's fraud, petitioner received and negotiated four checks representing the "profit" from the Island Meat scheme. The checks were made out to Martin Meat Company, [9] a fictitious company conceived by petitioner. Petitioner deposited two checks dated March 14, 1974 and May 10, 1974 in the amounts of $ 65,000.00 and $ 72,054.12, respectively, into his personal bank account at Broad National Bank. Petitioner deposited *101 a check dated March 27, 1974 in the amount of $ 9,037.50 into the "Mrs. Georgina Ramos c/o Rebecca Delgado" account at Springfield State Bank. Petitioner cashed a check dated November 18, 1974 in the amount of $ 10,000 at First National City Bank, Hato Rey, Puerto Rico. As a result of the Island Meat scheme, petitioner resigned his position with Davis White in January, 1975. On December 29, 1976, Davis White sued petitioners in the Superior Court of New Jersey, based on petitioner's breach of fiduciary duty to Davis White with respect to the Island Meat transaction. On May 29, 1979, the Superior Court of New Jersey found in favor of Davis White and awarded monetary damages in excess of $ 250,000. A part of this $ 250,000 amount represented the $ 156,091,62 profit which petitioner had reaped from the Island Meat scheme. In the decision dated May 29, 1979, the Court concluded that petitioner did divert from Davis White all sales made by Island Meat *102 and personally realized and pocketed almost all of the entire spread of the Davis White - Island Meat price and the Island Meat - Stouffers' price. Petitioner is the same person who was one of the defendants in the criminal case of United States v. Felix Delgado, Franklin Davis, Myron Davis, Docket no. CR 80-122, in the United States District Court for the District of New Jersey. On July 31, 1980, petitioner pled guilty to Count 5 of the indictment in that case which read as follows: That on or about April 15, 1975, in the District of New Jersey, the defendant FELIX I. DELGADO a resident of Mountainside, New Jersey, who during calendar year 1974 was married, did knowingly and wilfully attempt to evade and defeat a large part of the income tax due owing by him and his wife to the United States for the calendar year of 1974, by preparing an causing to be prepared, by signing and causing to be signed, and by mailing and causing to be mailed, in the District of New Jersey, a false and fraudulent U.S. Individual Income Tax Return (Form 1040) on behalf of himself and his wife, which was filed with the Internal Revenue Service, wherein it was stated that their taxable income for *103 said calendar year was the sum of $ 34,469 and that the amount of tax due and owing thereon was the sum of $ 9,427, whereas, as he then and there well knew and believed, their joint taxable income for said calendar year was the sum of $ 202,391, upon which said taxable income there was due and owing to the United States an income tax of $ 92,818. In violation of Title 26, United States Code, Section 7201. As a special condition ofhis probation, petitioner agreed to: pay and satisfy such federal income taxes, interest and penalties as may be established for the calendar years 1973 and 1974 by civil proceedings, including any compromise and settlement as may be agreed to. On July 31, 1980, Myron Davis and Franklin Davis pled guilty to violating section 7206(1) with respect to the corporate income tax return filed by Davis White for the fiscal year ending March 30, 1974. On March 28, 1975 the Davis brothers had filed an amended Form 1120X return for Davis White for the fiscal year ended March 30, 1974. On the amended return, the statement appeared that "Taxpayer inadvertently neglected to include $ 97,848.48 in sales . . ." This $ 97,848.48 is the total *104 amount of Davis White income which petitioner, Myron Davis and Franklin Davis diverted into the Deltek account and later received individually. After respondent's civil investigation, Franklin Davis and Myron Davis each paid income tax and an addition to tax under section 6653(b) with respect to the monies received during 1973 and 1974 from the Deltek bank account. On July 15, 1983, respondent issued a notice of deficiency to petitioners. Respondent asserts that during taxable year 1973, petitioners did not report payments of $ 22,856 received from Deltek. Further, respondent contends that petitioner did not report $ 16,283 from Deltek and $ 156,092 from Martin Meat Company as income in taxable year 1974. Respondent asserts the addition to tax for fraud in both years. OPINION The issues before us are (1) whether petitioners received unreported taxable income in the amounts of $ 22,856 and $ 172,375 during taxable years 1973 and 1974, respectively; and (2) whether any part of the underpayment of the tax is due to fraud with the intent to evade tax in taxable year 1973. [10]
As a preliminary matter, we note that *105 although petitioner bears the burden of proof as to the underlying income tax deficiencies determined in the notice of deficiency, Rule 142(a), respondent bears the burden of proof as to the additions to tax for fraud under section 6653(b). Sec. 7454(a); Rule 142(b). Respondent's determination of a deficiency in tax is presumptively correct and petitioners bear the burden of proving it wrong. Welch v. Helvering,290 U.S. 111, 114 (1933); Rule 142(a). In the case before us, we find that petitioners have not carried their burden of proof. With respect to the Deltek transaction, the evidence before us clearly indicates that a check payable to Davis White from Stouffers was deposited to the Deltek bank account in 1973. Six days later, two checks in the amounts of $ 17,142.48 and $ 5,714.16, or approximately $ 22,856 in total, were drawn on the Deltek account payable to petitioner. Subsequently, petitioner deposited this amount in his mother-in-law's bank account. The Stouffer's check was not reported on the corporate books or records of Davis White or Deltek and was not included on petitioners' 1973 Form 1040 return. *106 In 1974, petitioners received additional unreported income from a similar transaction. A check payable to Davis White from Island Meat was deposited in the Deltek bank account. Thereafter, two checks in the amounts of $ 12,212.00 and $ 4,070.88 payable to petitioner were drawn on the Deltek account. Petitioners utilized this $ 16,283.00 to prepay the outstanding mortgage loan on their personal residence by directly depositing the Deltek checks into their mortgage loan account at the Mohawk Savings Bank. Again, the Island Meat check was not reported on the corporate books or records of Davis White or Deltek and was not included on petitioners' 1974 Form 1040 return. As a general proposition, where a taxpayer has dominion and control over diverted funds, they are includable in his gross income. Sec. 61(a); Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 431 (1955). However, funds distributed by a corporation to its shareholders with respect to their stock over which the shareholders have dominion and control are taxed under the provisions of section 301(c). The Eighth *107 Circuit Court of Appeals describes the manner in which such diversions should be treated for tax purposes: The corporate distribution here was made with the knowledge of the stockholders and was acquiesced in by them. The corporation is liable for a substantial tax upon the diverted income it failed to report. Further tax will be collected from taxpayers under the constructive dividend theory. Fraudulent tax dealings should not be encouraged. Criminal penalties are provided for tax evasion, and fraud and delinquency penalties are assessed upon taxes due when the circumstances warrant. The Government should be allowed to collect all tax and penalties authorized by law, but it is not our function to expand tax liability to fields not covered by statute. We find nothing in the Tax Court's opinion to indicate that the diverted sums represent salary or any other recognized ordinary income. We believe that the only way that the diverted income already taxed to the corporation can be taxed to the individual taxpayers is by the treatment of such diversions as dividends and corporate distributions. * * * [Simon v. Commissioner,248 F.2d 869, 876-877 (8th Cir. 1957).] *108 The Eighth Circuit's view of diverted income has been approved by other courts, including this one. See DiZenzo v. Commissioner,348 F.2d 122, 126 (2d Cir. 1965), revg. T.C. Memo. 1964-121; Truesdell v. Commissioner, 89 T.C.     (slip.opinion no. 88, pp. 30-31) (December 30, 1987). In the case before us, the distribution of the Davis White funds through Deltek to petitioner was made with the knowledge of petitioner and was acquiesced in by the Davis brothers. In 1975, Davis White filed an amended Form 1120 return including the $ 97,848.48 amount which was not reported on Davis White's original Form 1120 for the fiscal year ending March 30, 1974. On July 31, 1980, Myron Davis and Franklin Davis pled guilty to violating section 7206(1) with respect to Form 1120 return filed by Davis White for the fiscal year ending March 30, 1974. The only way that diverted income already taxed to the corporation can be taxed to the individual taxpayer is by the treatment of such diversions as dividends and corporate distributions. Simon v. Commissioner,248 F.2d at 876-877. *109 Corporate money diverted to the personal use or control of a shareholder constitutes a constructive dividend only to the extent that the diversions are distributions from the corporation's earnings and profits. Section 301(a); section 301(c)(1); section 316; United States v. Ruffin,575 F.2d 346, 351 (2d Cir. 1978); DiZenzo v. Commissioner,348 F.2d at 125-27. The burden of proving that the corporation did not have earnings and profits sufficient to support dividend treatment lies with petitioner. DiZenzo v. Commissioner, supra.
We find that petitioner received corporate distributions from Davis White of $ 22,856 in taxable year 1973 and $ 16,283 in taxable year 1974. [11] These payments are includable in petitioners' income as a distribution with respect to his stock in Davis White under section 301. As petitioners presented no evidence one way or the other that these payments were not made from current or accumulated earnings and profits, the full amount of these payments are dividends as defined by sections 316(a) and 61(a)(7). [12]
*110 Additionally, in 1974, petitioners received unreported income of $ 156,092.00 from Island Meat Company. Petitioner received four checks payable to the Martin Meat Company from Island Meat. The parties have stipulated and we agree that Martin Meat is the alter ego of petitioner. Two of these checks were deposited directly into petitioner's personal bank account. One check was deposited in petitioner's mother-in-law's account. The final check was cashed by petitioner in Puerto Rico. Again, there is no record that these checks were ever reported on Davis White's corporate books or on petitioners' 1974 Form 1040 return. The Superior Court of New Jersey found, and we agree, that petitioner diverted from Davis White all sales made by Island Meat and personally realized and pocketed the profit margin built into the scam. The funds were diverted in fraud of the other shareholders of Davis White. Where a taxpayer has unlawfully and fraudulenty diverted funds from a corporation, he is liable for taxes on the full amount of the diverted funds if two key elements are satisfied. See James v. United States,366 U.S. 213 (1961); *111 Leaf v. Commissioner,33 T.C. 1093 (1960), affd. per curiam 295 F.2d 503 (6th Cir. 1961). First, the taxpayer must receive money without the consensual recognition of an obligation to repay. Second, there must be no restriction on the distribution of the money. James v. United States,366 U.S. at 219; Mais v. Commissioner,51 T.C. 494, 498-499 (1968). [13] We find that these elements are clearly satisfied. As we view the evidence, petitioner used his control over the financial dealings of Davis White and his dealings with Stouffers to divert to himself money which he was free to, and did, use and dispose at will. From such use of the money, petitioner obtained readily realizable economic value by purchasing stock and other amenities. These benefits from the diverted funds are sufficient to bring the funds within the broad sweep of gross income as defined in section 61. The mere possibility that demands may eventually be made for refunds, or that petitioner has an obligation to make requested refunds in a later taxable year, does not relieve him of tax on the diverted funds. James v. United States, supra; *112 United States v. Rosenthal,470 F.2d 837, 842 (2d Cir. 1972); Leaf v. Commissioner, supra at 1096; see also Quinn v. Commissioner,524 F.2d 617, 625 (7th Cir. 1975), affg. 62 T.C. 223 (1974); Stovall v. Commissioner,762 F.2d 891 (11th Cir. 1985), affg. a Memorandum Opinion of this Court. Accordingly, we hold that petitioner received additional ordinary income of $ 156,092 in taxable year 1974. Petitioner did not challenge respondent's determination with any credible evidence. Petitioner was a totally unbelievable and incredible witness. Petitioner's testimony was evasive, equivocal and circuitous. Petitioner asserts that the unreported income received by him in taxable years 1973 and 1974 is not taxable as these amounts were loans. As to the Deltek transaction, petitioner did not represent any written documents evidencing a loan between petitioner *113 and Deltek or petitioner and Davis White. As to the Island Meat transaction, petitioner not only backdated a document between himself and Sergio Miranda, but repeatedly changed his story as to his relationship with Sergio Miranda. We cannot place any faith whatsoever in petitioner's testimony. As a result, respondent's deficiencies are sustained. [14]
*114 With respect to these deficiencies, respondent asserts the addition to tax for fraud under section 6653(b). Section 6653(b)imposes an addition to tax if any part of an underpayment is due to fraud. Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Respondent must show that petitioner intended to evade taxes which he knew or believed that he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968); Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107, 111-112 (1956). Respondent must establish (1) that petitioner has underpaid his taxes for each year and (2) that some part of the underpayment is due to fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983). Respondent has established that petitioners have underpaid their taxes for each of the years in issue. Furthermore, *115 we have held that petitioners are collaterally estopped from contesting the fraud addition for taxable year 1974. Our inquiry, therefore, is narrowed to determining whether the underpayment for taxable year 1973 resulted from a fraudulent intent on the part of petitioner. The existence of fraud is a factual question to be determined by an examination of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. in an unpublished opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of taxpayer's intent is rarely available, and taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. at 112. Upon consideration of the entire record, we conclude that respondent has sustained his burden of proving fraud by clear and convincing evidence for taxable *116 year 1973. Although mere understatement of income alone is not sufficient to prove fraud, the consistent and substantial understatement of income is, by itself, strong evidence of fraud. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). A pattern of consistent underreporting of income, especially accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States,348 U.S. 121, 137 (1954); Otsuki v. Commissioner, supra.Moreover, a taxpayer's false and misleading statements to respondent's agents are indicia of fraud. Grosshandler v. Commissioner,75 T.C. 1 (1980). After a thorough examination of the record in this case, we can conclude with firm conviction that petitioner intended to evade taxes which he knew he owed, by conduct intended to conceal, mislead and prevent the collection of taxes. Petitioner pled guilty to section 7201 for the taxable year 1974. Petitioner has underreported income in taxable years 1973 and 1974. Petitioner was an evasive, incredible witness *117 whose self-serving testimony before this and other tribunals confirms his fraudulent conduct. Petitioner's testimony is inconsistent and totally unbelievable. Petitioner attempted to conceal his diversion of Davis White funds in taxable years 1973. [15] Futhermore, petitioner's conduct before respondent's Special Agent Lawrence Brown was clearly designed to obfuscate the true facts in this case. It is clear to this Court that petitioner had the fraudulent intent to evade tax in taxable year 1973 as well as taxable year 1974. Accordingly, we are compelled to find that petitioners are liable for the addition to tax under section 6653(b) for the taxable year 1973. Based on the record before us, petitioners are liable for the deficiencies and additions to tax under section 6653(b) for taxable years 1973 and 1974 as determined by respondent. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. On September 16, 1985, respondent filed a Motion for Partial Summary Judgment. On October 9, 1985, this Court granted respondent's motion in part and held that petitioners Felix Delgado's prior criminal conviction is conclusive and binding on petitioner. On July 31, 1980, petitioner Felix Delgado pled guilty to Count 5 of indictment no. CR 80-122 in the criminal case of United States v. Felix Delgado, Franklin Davis, and Myron Davis in the United States District Court for the District of New Jersey. Petitioner pled guilty to filing a false income tax return in taxable year 1974 under sec. 7201. A criminal judgment which is final may have collateral estoppel effect in a subsequent civil suit involving an identical issue. Neaderland v. Commissioner,424 F.2d 639, 642 (2d Cir. 1970). A taxpayer, who is convicted of a willful attempt to defeat or evade a particular tax, is estopped in a subsequent civil proceeding from contesting the issue of deficiency of payment due to fraud. Neaderland v. Commissioner, supra;Amos v. Commissioner,43 T.C. 50, 54-55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). As a result, this Court found that petitioner Felix Delgado is collaterally estopped from denying that he received unreported taxable income in taxable year 1974 and that his failure to report this taxable income was due to fraud with the intent to evade tax. However, as a determination of the underlying deficiency is not a necessary element under sec. 7201, petitioner may relitigate the deficiency amount in a later civil proceeding for the same taxable year. Moore v. United States,360 F.2d 353, 356-357 (4th Cir. 1965). Thus, we held that petitioner is entitled to contest the amount of unreported income in taxable year 1974. With respect to petitioner Rebecca Delgado, the parties stipulated prior to trial that if petitioner Felix Delgado is found liable for the addition to tax under sec. 6653(b), petitioner Rebecca Delgado would be liable to the same extent. Petitioner Rebecca Delgado did not appear at trial. Unless otherwise noted, "petitioner" in the singular form hereinafter refers to petitioner Felix Delgado. ↩
3. During the taxable years in issue before the Court, petitioner was a certified public accountant. ↩
4. Franklin Davis and Myron Davis are brothers. "The "Davis brothers" hereinafter refers to these two individuals. ↩
5. Petitioner also served as Vice-President and a member of the Board of Directors of Davis White during the taxable years in issue. ↩
6. On its corporate tax return for taxable year ending December 31, 1973, Deltek reported a loss of $ 621.00 and no retained earnings as of the end of its tax year. On its corporate tax return for taxable year ending December 31, 1974, Deltek reported a loss of $ 1,648.00 and no retained earnings as of the end of its tax year. ↩
7. With respect to the taxable years in issue, all monies deposited into the "Mrs Georgina Ramos c/o Rebecca Delgado" account at Springfield State Bank were deposited by petitioner. Petitioner Rebecca Delgado made all withdrawals from this account. During the years in issue, petitioners made no loans jointly or severally to Georgina Ramos nor did Georgina Ramos make any loans to either petitioners jointly or severally. ↩
8. Petitioner utilized a portion of the Island Meat proceeds to purchase IBM and other stock during 1974. ↩
9. The parties have stipulated that petitioner and Martin Meat Company are one and the same and that any transactions entered into on behalf of Martin Meat Company shall be deemed to be transactions entered into by petitioner. ↩
10. See supra↩ note 2. 11. There is no evidence from Davis White's amended Form 1120 return that these amounts represent salary as there was no deduction. The payments appear to represent petitioner's one-third share in Davis White plus his ten percent receipt of net profits. ↩
12. Petitioners point only to the fact that Deltek had no earnings and profits. The diverted income was Davis White's and that is the correct entity to determine distribution treatment. ↩
13. The James test includes sophisticated procedures for obtaining property by fraudulent means as well as the cruder method of dipping the hand in the till. United States v. Rosenthal,454 F.2d 1252, 1254↩ (2d Cir. 1972). 14. Petitioners challenged respondent's determination that petitioner had unreported partnership income of $ 500 in taxable year 1973. However, the parties have stipulated that during 1973, petitioner was a one-third partner in Norfolk Realty Company. Additionally, the parties have stipulated that during 1973, petitioner received $ 500 from Norfolk Realty Company. Respondent asserts that the $ 500 represents interest received on a condemnation award to Norfolk Realty Company. The interest portion of a condemnation award is properly classifiable as taxable income. Tiefenbrunn v. Commissioner,74 T.C. 1566, 1572↩ (1980). The only evidence before the Court on this issue is an unsigned copy of Form 1065 of Norfolk Realty and petitioners' Form 1040 return. Petitioner states that respondent did not show that he did not report this amount of $ 500. From petitioners' return, we cannot determine this fact. As petitioner bears the burden of proof, respondent's determination as to this item is sustained. 15. Moreover, in taxable year 1974, petitioner attempted to cover-up his dealings with Island Meat by requesting Sergio Miranda to backdate a letter which characterized the Martin Meat checks as loans. ↩